UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9/27/2021
```

**Mt. Hawley Insurance Company**,

                         Plaintiff,

-against-

**Pioneer Creek B LLC & Ambo Properties, LLC**,

                         Defendants.

**20-CV-00150-ALC**

**Opinion and Order**

**ANDREW L. CARTER, JR., District Judge:**

       Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley" or "Plaintiff") brings this action for declaratory judgment against Defendant Pioneer Creek B LLC ("Pioneer Creek") and its parent company Ambo Properties, LLC ("Ambo") (collectively "Defendants"). Mt. Hawley seeks a declaration from this Court declaring that it has no duty to defend or indemnify Defendants in connection with a negligence action in Texas state court. Despite having been served the summons and declaratory judgment complaint in this action, Defendants failed to answer or otherwise respond. Plaintiff now moves for default judgment against Defendants. For the reasons herein, the motion is **GRANTED.**

BACKGROUND

       Plaintiff brought this declaratory judgment action seeking a declaration about its legal obligation to cover defense and indemnification costs of Defendants, its insureds, in a civil state action brought by a person injured while performing work on Defendants' premises. On July 16, 2019, Carlos Iraheta ("Iraheta") suffered a serious leg injury after falling from a ladder during a roofing job on the premises of Pioneer Creek. On August 30, 2019, he filed a negligence suit in

the District Court of Dallas County, Texas (Cause No. DC-19-13691) against Pioneer Creek, and later amended to name Ambo as well (the "Underlying Action").[1] Compl. ¶¶ 14, Ex. 1-2. In that action, Iraheta seeks damages for medical costs, as well as for physical and mental pain, resulting from his injury. Iraheta was retained by Pedro Bergos ("Bergos") to perform the roofing work at issue in the Underlying Action and was working for Bergos during the alleged incident. Compl. ¶¶ 26, 28. The Commercial General Liability Policy (No. MGL0191128) ("Policy") issued by Mt. Hawley to Ambo and Pioneer Creek provided for coverage for bodily injury up to $1 million per occurrence from May 31, 2019 to May 31, 2020. *Id.* ¶¶ 17. Mt. Hawley alleges that the Policy does not cover Iraheta's injury because Defendants failed to comply with its coverage terms and conditions.

A. Tenants and Contractors Endorsement

The Tenants and Contractors—Conditions of Coverage Endorsement ("Endorsement") stipulates that Mt. Hawley has "no obligation to defend or indemnify any insured for any 'bodily injury' . . . arising directly or indirectly from . . . work by a 'contractor'" unless the conditions of coverage are satisfied. *Id.* ¶¶ 18. In particular, the Policy requires, *inter alia*, that:

> . . . .
>
> 5. Certificates of insurance are obtained from each and every "contractor" prior to commencement of such "contractor's" work. Such certificates of insurance must list primary commercial general liability coverage in effect at all times the work is performed with limits equal to or greater than the limits of this policy.
>
> 6. Written agreements are obtained from each and every "contractor" which hold harmless and indemnify the insured(s) against whom the claim is made for all injuries, damages, claims and suits arising directly or indirectly from the "contractor's" work (including any work performed by the "contractor's" subcontractors or sub-subcontractors).

---

[1] "Mt. Hawley is defending Pioneer Creek and will defend Ambo in the *Iraheta* Action on a gratuitous basis pending the Court's disposition of this action." Compl. ¶¶ 21.

2

>. . . .
>
>    7. The written agreements required in condition **6**. must also require that the "contractor" will obtain additional insured coverage under the "contractor's" primary commercial general liability policy for each insured(s) against whom the claim is made.
>
>. . . .
>
>    8. The "contractor's" primary commercial general liability insurer agrees to defend and indemnify every insured against whom the claim is made for the "bodily injury," "property damage," and/or "personal and advertising injury," and does so on a primary basis under a policy with limits equal to or greater than the limits of this policy. *Id.* ¶¶ 18.

The Endorsement defines "contractor" as "any person or entity that any 'insured' hires or contracts with for the performance of any work for construction, renovations, maintenance (including, but not limited to, snow removal), installation, repairs, or provision of security regardless of where such work is performed, and regardless of whether such person or entity is described as a 'contractor', construction manager, general contractor, subcontractor, vendor, supplier, materialman, service provider or by any other term." *Id.*

B. Notice Provisions

The Duties in the Event of Occurrence, Offense, Claim or Suit Conditions ("Notice Provision") of the Policy requires that the insured comply with the following conditions:

>a. "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim. To the extent possible, notice should include:
>
>>(1) How, when and where the 'occurrence' or offense took place;
>>
>>(2) The names and addresses of any injured persons and witnesses; and

> > (3) The nature and location of any injury or damage arising out of the 'occurrence' or offense.
>
> b. If a claim is made or 'suit' is brought against any insured, you must:
>
> > (1) Immediately record the specifics of the claim or "suit" and the date received; and
> >
> > (2) Notify us as soon as practicable.
> >
> > You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> c. You and any other involved insured must:
>
> > (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
> >
> > (2) Authorize us to obtain records and other information;
> >
> > (3) Cooperate with us in the investigation or settlement of the claim or defense against the 'suit'; and
> >
> > (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
>
> d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent. *Id.* ¶¶ 86.

Plaintiff asks the Court to declare that the Policy "does not provide coverage for the bodily injury sustained by Iraheta while he was performing work on premises owned by Pioneer Creek." *Id.* ¶¶ 1. More specifically, the judgment would declare that Mt. Hawley has "no duty to defend or indemnify," and "is entitled to withdraw its defense" of, Pioneer Creek and Ambo in the Underlying Action.[2]

---

[2] By letter dated March 22, 2021, Mt. Hawley notified this Court that the Underlying Action had settled and, while Mt. Hawley had paid defense costs on behalf of Defendants pending this Court's resolution of the instant action, they had not contributed to the *Iraheta* settlement itself. ECF No. 34.

<u>C. Procedural History</u>

On October 26, 2020, Defendants were served the Summons and Second Amended Complaint ("Complaint") by electronic mail. ECF No. 19. After Defendants failed to answer or otherwise respond to the Complaint, Plaintiff requested and was issued a Clerk's Certificate of Default as to Defendants. ECF Nos. 20, 21. On March 10, 2021, Plaintiff filed a Motion for Default Judgment and supporting papers, the subject of this Opinion and Order, which was served on Defendants. ECF Nos. 27, 28. The following day, this Court issued to Defendants an Order to Show Cause why the motion for default judgment should not be granted, which was also served on Defendants. ECF No. 29, 31-32. To date, Defendants have not responded to the motion or the Order to Show Cause. The Court considers the motion unopposed.

**LEGAL STANDARD**

A party against whom a judgment for affirmative relief is sought is in default when it has failed to plead or otherwise defend the suit. *See* Fed. R. Civ. P. 55(a). "[A] default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability." *Belizaire v. RAV Investigative and Sec. Servs. Ltd.*, 61 F.Supp.3d 336, 344 (S.D.N.Y. 2014) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)). In evaluating a motion for default judgment, the court "must accept as true all of the factual allegations of the non-defaulting party and draw all reasonable inferences in its favor." *Id.* (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).ff Nonetheless, because a party in default does not admit conclusions of law, a district court must "determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Id.* (quoting *Finkel*, 577 F.3d at 84). "Rule 55 of the *Federal Rules of Civil Procedure* provides a two-step process for obtaining a default judgment . . . . [t]he first step is to obtain a default" and "plaintiff

must next seek a judgment by default under Rule 55(b)." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (emphasis in original). Under Rule 55(b)(2), "the party must apply to the court for a default judgment." *Id.*

## DISCUSSION

A. Subject Matter Jurisdiction

Before granting a motion for default judgment, a court must first determine whether it has subject matter jurisdiction over the action. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125-27 (2d Cir. 2011); *see, e.g., Sung Taek Kwon v. Leg Res., Inc.*, No. 15-CV-9658 (RWL), 2018 WL 2316630, at *3 (S.D.N.Y. May 7, 2018); *Bracken v. MH Pillars Inc.*, 290 F.Supp.3d 258, 262-63 (S.D.N.Y. 2017). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 500 (2006) ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised . . . by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.") (citation omitted).

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). When a plaintiff seeks declaratory relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347 (1977) (citations omitted). The party invoking subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012). The amount in controversy is measured "as of the date of the complaint." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003).

"A court may only consider the entire value of an insurance policy . . . in its determination of the amount in controversy if the validity of the policy or contract itself is at issue." *Conzo v. SMA Life Assur. Co.*, No. 01 CIV. 11243 (DLC), 2003 WL 21018823, at *2 (S.D.N.Y. May 6, 2003) (citing *Beacon Constr. Co., Inc. v. Matco Elec. Co.,* 521 F.2d 392, 399 (2d Cir. 1975)). In an action for declaratory relief involving "the applicability of an insurance policy to a particular occurrence, the jurisdictional amount in controversy is measured by the value of the underlying claim—not the face amount of the policy." *Amica Mut. Ins. v. Levine*, 7 F.Supp.3d 182, 187 (D.Conn. Mar. 21, 2014) (quoting *Hartford Ins. Group v. Lou-Con, Inc.*, 293 F.3d 908, 911 (5th Cir. 2002) (internal quotation marks omitted)

Here, Mt. Hawley has satisfied its burden of demonstrating subject matter jurisdiction on diversity grounds. There is complete diversity between the Parties—Mt. Hawley is a citizen of Illinois, Pioneer Creek a citizen of Texas, and Ambo a citizen of New Jersey. The amount-in-controversy also exceeds $75,000. Plaintiff seeks declaratory relief regarding coverage for a particular occurrence. Though the Complaint, which includes the complaint in the Underlying Action, is silent on the underlying value of Iraheta's claims, there is a "reasonable probability" that the value of the underlying claims—alleged damages for medical costs and mental and emotional harm—could exceed $75,000. *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994). There is also no showing by Defendant that "to a legal certainty" the amount in controversy has not been met here. *Scherer*, 347 F.3d at 397 (footnote omitted). Because there is complete diversity and the jurisdictional amount has been satisfied, this Court has subject matter jurisdiction to preside over this case.

B. Declaratory Judgment Act

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001) (quoting 28 U.S.C. § 2201(a)). "[D]eclaratory-judgment actions that satisfy the case-or-controversy requirement" are "definite and concrete, touching the legal relations of parties having adverse legal interests . . . real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[3] *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)) (internal quotation marks omitted). The dispute "must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Jenkins v. United States*, 386 F.3d 415, 417-18 (2d Cir. 2004) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952)). In the context of liability insurance, a proper declaratory judgment involves live underlying claims against the insured. *Cf. Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) ("[L]itigation over insurance coverage has become the paradigm for asserting jurisdiction despite 'future contingencies that will determine whether a controversy ever actually becomes real.'") (citation omitted).

---

[3] In *MedImmune*, the Supreme Court also relied on one of its earlier decisions to support this proposition. *See Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.").

There is a live case or controversy in this action. Mt. Hawley seeks a declaration about whether its Policy requires the payment of defense and indemnification costs to Defendants in connection with the Underlying Action. Though Mt. Hawley has already paid defense costs, those costs might be reimbursed, if this Court should conclude that Mt. Hawley has no duty to defend. *Cf. Scottsdale Ins. Co. v. R.I. Pools Inc.*, 710 F.3d 488, 492 (2d Cir. 2013) (discussing possible reimbursement of previously expended defense costs to insurer). Whether Mt. Hawley has a duty to defend does not depend on actual liability. *Nautilus Ins. Co. v. BSA Ltd. P'ship*, 602 F. Supp. 2d 641, 649 (D. Md. 2009) ("[A] court simply compares the insurance policy with the complaint in the underlying action."). And though the Underlying Action has settled, Mt. Hawley has not yet paid out any portion of the settlement.[4] Therefore, the controversy here is definite and concrete, and the adverse legal interests between Plaintiff and Defendants are real and substantial.

Once "a case of actual controversy" is established, a court must exercise its discretion to determine whether it will preside over the declaratory judgment. In doing so, courts in the Second Circuit *must* consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). Moreover, the court *may* consider: "(1) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more

---

[4] ECF No. 34.

effective remedy." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003) (punctuation omitted).

The Court will exercise its discretion to preside over this action. The judgment would serve a useful purpose in clarifying and settling the legal issues and would finalize the controversy and offer relief from uncertainty over whether the Policy covers defense and indemnification costs for Defendants in connection with the Underlying Action. None of the other discretionary factors weigh against this Court presiding over this action. Because a case of actual controversy has been established and the Court sees no reason not to exercise its discretion to preside over this declaratory judgment action, it will do so.

C. Contract Interpretation under New York Law

"Under New York law, insurance policies are interpreted according to general rules of contract interpretation."[5] *Olin Corp. v. AM. Home Assur. Co.*, 704 F.3d 89, 98 (2d Cir. 2012) (footnote and citations omitted). "'[A]n insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract.'" *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (quoting *Village of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995)). "Any 'unambiguous provisions of an insurance contract must be given their plain and ordinary meaning.'" *City of New York v. Fleet Gen. Ins. Grp., Inc.*, No. 19CV6629RPKST, 2021 WL 1906467, at *5 (E.D.N.Y. May 12, 2021) (quoting *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 884 N.E.2d 1044, 1047 (N.Y. 2008)). Under New York's well-settled *contra proferentem* rule,

---

[5] The Policy contains forum and choice-of-law provisions that stipulate that New York law governs "[a]ll matters arising hereunder including questions related to the validity, interpretation, performance and enforcement of this Policy [which] shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules)." Compl. ¶¶ 19 (quoting Service of Suit and Conditions Endorsement of the Policy).

"unresolved ambiguities in insurance contracts are construed in favor of the insured." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 615 (2d Cir. 2001) (citing *Handelsman v. Sea Ins. Co.*, 647 N.E.2d 1258, 1260 (N.Y. 1994)).

D. Duty to Defend

"In New York, an insurer's duty to defend is 'exceedingly broad' and distinct from the duty to indemnify." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (quoting *Auto. Ins. Co. of Hartford v. Cook,* 7 N.Y.3d 131, 137 (2006)). "[A]n insurer will be called upon to provide a defense whenever the allegations of the complaint 'suggest . . . a reasonable possibility of coverage.'" *Id.* at 141 (collecting state cases). "[A]n insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course." *Auto. Ins. Co.* 7 N.Y.3d at 137. "[A] separate, contractual duty to defend exists, and perdures until it is determined *with certainty* that the policy does not provide coverage." *Hugo Boss*, 252 F.3d at 620 (emphasis in original). "The duty to defend insureds . . . is derived from the allegations of the complaint and the terms of the policy." *Cincinnati Ins. Co. v. Roy's Plumbing, Inc.*, 692 Fed.Appx. 37, 38 (2d Cir. 2017) (summary order) (quoting *Technicon Elecs. Corp. v. Am. Home Assur. Co.*, 74 N.Y.2d 66, 73, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989)).

E. Duty to Indemnify

"The narrower duty to indemnify arises only if the claim for which the insured has been judged liable lies within the policy's coverage." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005) (citing *Frontier Insulation Contractors, Inc. v. Merchs. Mut. Ins. Co.*, 91 N.Y.2d 169, 178, 667 N.Y.S.2d 982, 690 N.E.2d 866 (1997)). "Thus, while the duty to defend is measured against the possibility of a recovery, the duty to pay is determined by the actual basis for the

insured's liability to a third person." *Id.* (quoting *Servidone Constr. Corp. v. Sec. Ins. Co.*, 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 477 N.E.2d 441 (1985)) (internal quotation marks omitted).

Mt. Hawley argues two reasons why the Policy does not cover defense and indemnification costs for Defendants. First, they argue that Defendants violated the Tenants and Contractors Endorsement due to failure to "obtain[] a sufficient certificate of insurance from the contractor prior to the work (condition No. 5); obtain[] a sufficient written indemnity agreement from the contractor (No. 6); obtain[] a sufficient written agreement requiring the contractor to procure additional insured coverage for the insureds (No. 7); and secure[] defense and indemnification from the contractor's general liability insurer (No. 8)." Pl.'s Mem. at 14. Second, they argue that Defendants did not provide timely notice of the occurrence, claims, or the Underlying Action. The Court concludes that Mt. Hawley has no obligation to defend or indemnify Defendants in the Underlying Action.

Mt. Hawley has no obligation to defend or indemnify. The leg injury that Iraheta suffered in July 2019 while working for Bergos on Pioneer Creek's premises would normally fall within the Policy's coverage. However, the Policy outlines unambiguous conditions that must be satisfied *before* Plaintiff owes any duty to defend or indemnify, which Defendants failed to comply with. In particular, the Policy states that Plaintiff "shall have no obligation to defend or indemnify" unless "each and every of the . . . conditions is satisfied." Compl. ¶¶ 18. As used in the Endorsement, Bergos was a "contractor" that Defendants retained to perform roofing work on their premises, and Iraheta suffered his leg injury while performing that roofing work in the course of his employment for Bergos. And Iraheta suffered a bodily injury arising directly or indirectly from roofing work Bergos (contractor) hired or contracted him to do. However, neither Pioneer Creek nor Ambo met the clear conditions of the Policy. As alleged, they failed to obtain

a certificate of insurance from Bergos prior to commencement of the work at issue (as described in condition 5); obtain written agreements from Bergos (as described in conditions 6 and 7); and obtain an agreement from Bergos' primary commercial general liability insurer to defend and indemnify Bergos (as described in condition 8). The factual allegations here "plainly do not bring the case within the coverage of the policy." *Spicer v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 1:20-CV-3784-GHW, 2021 WL 2809601, at *9 (S.D.N.Y. July 3, 2021) (quoting *George Muhlstock & Co. v. Am. Home Assurance Co.*, 502 N.Y.S.2d 174, 179 (1st Dep't 1986)). Thus, Mt. Hawley is relieved of its duty to defend and indemnify and, therefore, Defendants shall reimburse Mt. Hawley for defense costs in connection with the Underlying Action.

Moreover, it is undisputed that Defendants have no duty to defend or indemnify as they violated the Notice Provisions of the Policy. The Policy requires that Defendants provide written notice "as soon as practicable" of an occurrence, claim, or suit against them (as the insureds) to Mt. Hawley (as the insurer). Defendants failed to comply with these provisions. The Complaint alleges that Defendants were made aware of the alleged underlying incident, which occurred on July 16, 2019, "no later than within approximately one week of its occurrence," Compl. ¶¶ 75, 95; Pioneer Creek received a claim letter from Iraheta's counsel in August 2019, Compl. ¶¶ 77; Ambo had notice of the underlying incident in August 2019, Compl. ¶¶ 97; and Pioneer Creek was served with the petition in the Underlying Action on September 13, 2019 with service perfected on September 16, 2019. Compl. ¶¶ 79. The Complaint alleges that Defendants did not provide notice of occurrence, claim, or suit to Mt. Hawley until December 20, 2019, and not until after Mt. Hawley filed a motion for default judgment in the present action. Compl. ¶¶ 82-85, 99-100. To date, Defendants have not appeared in this case or otherwise opposed this motion for default judgment or the allegations in the Complaint.

"Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy." *Com. Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2d Cir. 1987) (collecting cases). The notice provision is triggered here because "the circumstances known to the insured . . . would have suggested to a reasonable person the possibility of a claim." *Id.* at 272 (collecting cases). In New York, "delays of one or two months are routinely held unreasonable." *Indian Harbor Ins. Co. v. City of San Diego*, 586 Fed.Appx. 726, 729 (2d Cir. 2014) (summary order) (citations omitted). Defendants far exceeded two months in providing notice to Mt. Hawley of the occurrence, claims, and suit at issue. They have also not disputed the allegations in the Complaint or provided any excuse for their breach of the Notice Provisions. Thus, Mt. Hawley is not obligated to defend or indemnify Defendants in connection with the Underlying Action.

## CONCLUSION

For the foregoing reasons, Plaintiff Mt. Hawley's motion for default judgment is hereby **GRANTED** with respect to its declaratory judgment that Mt. Hawley is not obligated to defend or indemnify Defendants in the Underlying Action.

**SO ORDERED.**

**Dated**: Sept. 27, 2021
New York, New York

_____
The Hon. Andrew L. Carter, Jr.
United States District Judge